### S. H. CLIFFT v. DAVID WADE'S EXECUTOR.

1. CONSTRUCTION OF WILL. — In a will, the testator made a special bequest to a son and to a daughter over and above their equal shares; limited the amount of the estate to be received by a granddaughter; leaving four children and a son and daughter of a deceased daughter: *Held*, That such will only altered the course of the law so far as it gave the special legacies and restricted the amount to the granddaughter, and that the grandson would take

one-ninth of the residue, and each surviving son and daughter two-ninths.

2. RECEIPT—ESTOPPEL.—A receipt given by an heir to an executor for a specific amount of money, in full of his share in the estate, is not binding upon the heir as to any residue coming to him as heir.

3. SAME.—Such payment being made of the funds of the estate, the receipt as to any excess of the share over the amount paid was without consideration, and the executor took no right by the receipt, save as evidence of payment of so much to the heir executing it.

APPEAL from Fayette.  Tried below before the Hon. I. B. McFarland.

David Wade died at his domicil in Fayette county, Texas, on the 15th day of March, 1861, leaving as heirs at the time of his death four children, named W. W. Wade, J. R. Wade, Delilah Dunlevy, (born Wade,) and Nancy Ann Wade, and two grandchildren, named Samuel H. Clifft, the appellant, and his sister, Martha Rickers, (born Clifft, and then wife of Antone Rickers,) said grandchildren being the only children of a deceased daughter.  David Wade left a will, which was probated in Fayette county on the 29th of April, 1861, and on the same day W. W. Wade qualified as executor under the provisions of the will.  The property of the estate was appraised at something over $21,000, and it was admitted that there still remained a balance of assets in the hands of the executor, subject to distribution among the heirs.

The will of David Wade, deceased, is as follows:

"FAYETTEVILLE, FAYETTE Co., 
    THE STATE OF TEXAS. }

"In the name of God, amen: I, David Wade, of the county and State aforesaid, being of sound mind and memory, and considering the uncertainty of this frail and transitory life, do therefore make, ordain, publish, and declare this to be my last will and testament; that is to say, first, after all my lawful debts are paid and discharged, I wish that all my estate, both real and personal, be sold at public sale, on a

credit of twelve months, except that which is otherwise provided for in this will.

"To my son, William W. Wade, I give and bequeath, over and above his equal share of all other property, real and personal, the iron money-safe. I also bequeath to my beloved daughter, Nancy Ann Wade, the sum of $700 in money over and above her equal share in all other property, both real and personal.

"To my granddaughter, Martha Clifft, who married a man named Antone Rickers, I give and bequeath the sum of $5 in money, it being my will that she, the said Martha Clifft aforesaid, is to have nothing more than the $5 given. Likewise, I make, constitute, and appoint my son, William W. Wade, to be the executor of this my last will and testament, hereby revoking all former wills by me made. In witness whereof," &c.

On the 29th of August, 1873, S. H. Clifft commenced a proceeding to compel a final settlement and distribution among the heirs, and claimed for himself a one-fifth interest in the estate.

The executor answered, in substance, that the extent of the interest of appellant Clifft in said estate had long been a matter of dispute, he claiming the full share of his mother, while the executor had always held that he was entitled to but half of what would have been his mother's share, and that he (the executor) had paid Clifft a balance of $328.25, in consideration of which sum of money Clifft had relinquished to the executor all claim he might have against the estate of David Wade, &c.

Upon the issues thus raised, the parties waived a jury and submitted the matters to the court.

The testimony of W. W. Wade shows that he, as executor, at different times, had made four payments to Clifft out of the funds of the estate, amounting in the aggregate to $1,271.75, and filed the receipts therefor, as vouchers, with his showing made to the probate side of the District Court; that on the

19th of October, 1871, he paid him the further sum of $328.25, for which said last sum of money the executor claimed in his testimony that he had bought Clifft's interest in the estate, and that the receipt given therefor was a transfer and conveyance of the same. The executor further testified that Clifft was of age at the time he claimed to have bought him out, and that Clifft was then, and had been for years, in needy circumstances; that he and Clifft had always differed about the extent of the latter's interest in the estate, he insisting that it was one-tenth and Clifft claiming one-fifth; and that at the time of the execution of the last receipt the attorney for the estate had been advised with, and had given it as his opinion that Clifft was entitled to receive but one-half of what would have been his mother's share had she lived.

Clifft's testimony was, in substance, that at the time he gave the last receipt he was very much in need of money; that the executor then told him he had just advised with the attorney for the estate, and that in said attorney's opinion, Clifft was entitled to but half of what he claimed, and that he (Clifft) then told the executor if that was so to pay him the money and he would give a receipt. Witness also states that at that time the executor did not claim, nor did he agree, that said receipt was for anything but the balance of half of what would have been his mother's share in the estate had she lived.

Upon this state of facts the court below adjudged that, after deducting all costs, legacies, and debts, the grandchild, S. H. Clifft, was entitled to receive as his share one-ninth of the estate of David Wade, and that each of the four children was entitled to two-ninths. From this part of the judgment Clifft appealed. The court further adjudged that the receipt under which the executor claimed to have purchased the balance of Clifft's interest in the estate was not a sale or compromise thereof, but, with the other receipts, constituted vouchers in the hands of the executor showing how much.

money Clifft had received out of the estate, and that Clifft was entitled to receive the balance of his one-ninth interest in David Wade's estate. From this last part of the decree the executor appealed.

*Timmons & Brown,* for appellant.—By reference to the will of David Wade, it will be seen that he orders the entire property of his estate, (except an iron safe,) worth some $21,000, sold, and then makes three special bequests, to wit: To his son, W. W. Wade, he gives an iron "money-safe"; to his daughter, Nancy Ann Wade, he gives "$700 in money"; and to his "granddaughter, Martha Clifft, who married a man named Antone Rickers," he gives "the sum of $5 in money." The remainder of the estate is undisposed of by the will, and it is the duty of the court to make a proper distribution of it among the heirs, under our law of descent and distribution, subject to the single limitation of the will, that the said Martha Clifft shall have nothing but said legacy of $5. There is little room for discussion in this case, the will being without precedent, and we are unable to find anything analogous. The granddaughter takes $5 as legatee, but nothing as heir, being disinherited by the terms of the will; and she being cut off, it remains to be determined how the other heirs shall share the estate, they consisting, at the death of the testator, of four children, W. W. Wade, Delilah Dunlevy, Nancy Ann Wade, J. R. Wade, and one grandson, the appellant S. H. Clifft. Our statute of descent and distribution provides: "When any person, having title to any estate of inheritance, real, personal, or mixed, shall die intestate, as to such estate, and shall leave no surviving husband or wife, it shall descend and pass in parcenary to his or her kindred, male and female, in the following course, that is to say, first, to his or her children and their descendants, if any there be." (Paschal's Dig., art. 3419.) It also provides: "Where the children of the intestate's brothers and sisters, uncles and aunts, or any other relations of the de-

ceased standing in the same degree, come into the partition, they shall take *per capita,* that is to say, by persons; and where a part of them being dead, and a part living, the issue of those dead have right to partition. Such issue shall take *per stirpes* or by stocks, that is to say, the shares of their deceased parents." (Paschal's Dig., art. 3425.)

It is a settled rule of construction that the testator is presumed to have in his mind the statute law when making his will; and David Wade, when he declined to make a disposition of his property, save the three special bequests mentioned, intended that his estate should be partitioned among his heirs under the law of the land. Whatever may have been his desire, none other is apparent from the will; and as he died intestate as to nearly all of his estate, the court can only look to our statute of descents in making a distribution thereof among his heirs. By what process of reasoning, or by what law of our State, the court below gave each of the children two-ninths of said estate and the grandchild one-ninth, we are at loss to imagine. Certainly not under our statute of descent and distribution. The first provision of the statute above cited provides that the property shall descend "to his or her children and their descendants"; and the second one cited provides that "where a part of them being dead, and a part living, the issue of those dead shall take *per stirpes* or by stocks, that is to say, the shares of their deceased parents." Certainly the children of Sarah A. M. Clifft, the daughter of the testator, in the absence of any cause for their exclusion, would, under our law, have a right to take the share of their deceased mother, which would be one-fifth part of the estate after payment of costs of administration, debts, and legacies. As long as there is any one to take in the line of descent marked out by the statute, the property must follow the track so marked out. The fact that " Martha Clifft, wife of Antone Rickers," was disinherited, can have no influence upon the course the property should take. As long as there are grandchildren of the testator *in esse*

capable of taking, they are entitled under the statute to " the share of their deceased parent," whether they be one or ten in number. To our mind, the disinheriting of the grandchild, Martha Clift, has, in law, the same effect as if she were dead. She cannot take as heir, and it matters not, it seems to us, whether she had been cut off by death or by the hand of her grandfather. But there is a grandchild capable of taking, the appellant S. H. Clifft, and to him his dead mother's share should go in the same manner as if he had been her only child. We think, therefore, this court should reverse and reform the judgment in the court below so as to give S. H. Clifft one-fifth part of the estate of David Wade, deceased, after payment of debts, legacies, and costs of administration; and that the remainder of said judgment should be affirmed, for we do not think this court should disturb that part of it which is complained of by the executor. To do so would authorize executors to keep open estates indefinitely, and use the estate funds intrusted to them in purchasing the interests of the heirs at a discount proportioned to their necessities.

*Moore & Ledbetter*, for appellee. — The error assigned by appellee is the construction of the receipt or contract of Clifft, dated October 19, 1871.

There are no allegations of mistake, undue influence, fraud, or that said Clifft was overreached in this receipt.

That evidence not supported by the allegations cannot sustain a verdict or judgment, though received without objection, is elementary. (3 Tex., 305; 7 Tex., 338; 16 Tex., 408.)

The testimony of Wade and Clifft shows that the particular interest to which Clifft was entitled under the will of David Wade had long been a question of dispute and embarrassing the distribution of the estate. The matter was finally settled amicably.

Clifft was then a married man of several years' standing, twenty-seven years of age, and, after waiting nearly three

years, expects the court to adjudicate his rights under the will without proper averments. In so far as the court indulged his complaint, we ask the judgment to be reversed and reformed.

BONNER, ASSOCIATE JUSTICE. — By agreement, this case comes before us upon two questions—

1. Whether under a proper construction of the will of David Wade, deceased, the plaintiff, as one of two grandchildren, issue of a deceased daughter of the testator, should receive the full share of the estate to which his mother, if living, would have been entitled, or a half share only?

2. Whether by the terms of a receipt given by the plaintiff to the executor, purporting to have been in full of his interest in the estate, in connection with the testimony, he had already received his full share, or is entitled to an additional amount?

First. That part of the will in which the testator makes disposition of his estate reads as follows:

" First, after all my lawful debts are paid and discharged, I wish that all my estate, both real and personal, be sold at public sale, on a credit of twelve months, except that which is otherwise provided for in this will.

" To my son, William W. Wade, I give and bequeath over and above his equal share of all other property, real and personal, the iron money-safe. I also bequeath to my beloved daughter, Nancy Ann Wade, the sum of $700 in money, over and above her equal share in all other property, both real and personal.

" To my granddaughter, Martha Clifft, who married a man named Antone Rickers, I give and bequeath the sum of $5 in money, it being my will that she, the said Martha Clifft aforesaid, is to have nothing more than the $5 given. Likewise I make, constitute, and appoint my son, William W. Wade, to be the executor of this my last will and testament,

hereby revoking all former wills by me made. In witness whereof," &c.

We think the court below properly construed the intention of the testator to have been simply to change the general law of descent and distribution so as to give to his son and daughter, William W. and Nancy Ann Wade, specific legacies over and above the shares to which they would have been entitled under the statute, and to deprive his granddaughter, Martha Rickers, of all share in his estate, except the sum of $5; and that after paying these legacies the remainder of his estate should be divided under the law, giving to his four children (there being two others besides those named in the will) equal full shares, and to his remaining grandchild, the plaintiff, a half share only, and not the full share to which he and Mrs. Rickers, in right of their mother, would have been entitled had it not been for the provision as to her contained in the will. (Paschal's Dig., arts. 3419, 3425, 5373.)

Second. The executor held the estate in trust for the benefit of all the heirs, and their respective shares after payment of the specific legacies were fixed by law, and not by his mistaken construction of it, though made in good faith, by which the share of the plaintiff was diminished and those of the other heirs, among whom was the executor himself, were increased.

It is admitted that the receipt of the plaintiff was for money which belonged to the estate, and hence no consideration was in fact paid for the release of his remaining interest in this fund. The amount received seems to have been less than his proper share, and we think it would be inequitable, under the circumstances as disclosed by the testimony, to hold him bound by the terms of the receipt. This is the view taken by the court below, and, we think, is sustained on principles of law and equity.

The judgment of the court below will be affirmed, and as both parties prosecuted an appeal, the cost will be equally divided between them. It is accordingly so ordered.

JUDGMENT AFFIRMED.